UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

GORAN JOKIC,

                           PLAINTIFF,        AMENDED COMPLAINT

       -AGAINST-                         18-CV-2899

NEW YORK CITY, POLICE OFFICER CONNOR
LICHTE and POLICE OFFICER MICHAEL KENEFICK,
individually, and in their capacity as members of New York
City Police Department,

                           DEFENDANTS.

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1. This is a civil action in which Plaintiff, Mr. Goran Jokic ("Mr. Jokic"), seeks relief for the violation of his rights secured by 42 USC 1983, the Fourth and Fourteenth Amendments to the United States Constitution.

2. The claims arise from an incident on or about September 26, 2017, in which officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected Mr. Jokic to *inter alia* excessive force, false arrest, and denial of right to a fair trial.

3. Plaintiff seeks monetary damages (special, compensatory and punitive) against Defendants and an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC 1331, 42 USC 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. Venue is laid within the United States District Court for the Eastern District of New York in that the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

6. Plaintiff, Mr. Jokic, is a citizen of the United States and at all times here relevant resided at 2127 33rd Street, Apt. 3A, Astoria, Queens.

7. New York City is a municipal corporation organized under the laws of the State of New York.

8. Police Officer Connor Lichte ("PO Lichte") and Police Officer Michael Kenefick ("PO Kenefick") at all times here relevant were members of the NYPD, and are sued in their individual and professional capacities.

9. At all times mentioned, Defendants were acting under color of state law, under color of the statues, ordinances, regulations, policies, and customs and usages of the City of New York.

## FACTUAL ALLEGATIONS

10. Mr. Jokic is 32 years old and works for the Serafina Restaurant Group.

11. On or about September 25, 2017, Mr. Jokic arranged to meet two friends in Astoria, Queens.

12. At approximately 2:00 am on September 26, 2017, Mr. Jokic met his two friends, Dzemil Cirikovic and Denis Nekovic at the corner of Astoria Boulevard and 31st Street.

13. As they were meeting with each other, a police car pulled up beside them.

14. PO Lichte and PO Kenefick got out of the car and asked Mr. Jokic for identification.

15. Mr. Jokic asked the officers why he needed to provide identification.

16. PO Lichte and PO Kenefick falsely accused Mr. Jokic of urinating on the street.

17. Mr. Jokic denied urinating on the street and pointed out that there were no urination marks anywhere on the street.

18. PO Lichte then forcefully grabbed at Mr. Jokic's arms.

19. Other police officers arrived at the location.

20. PO Lichte then shoved Mr. Jokic, causing Mr. Jokic to fall backwards against a parked car.

21. The side of Mr. Jokic's head hit the fender of the car and Mr. Jokic fell unconscious to the ground.

22. Once Mr. Jokic regained consciousness, PO Lichte forcefully pushed his knee down on Mr. Jokic's back, causing Mr. Jokic extreme pain.

23. PO Lichte and PO Kenefick handcuffed Mr. Jokic behind his back.

24. The handcuffs were extremely tight and caused Mr. Jokic extreme pain.

25. Mr. Jokic asked PO Lichte and PO Kenefick to loosen the handcuffs, but both officers refused.

26. Shortly thereafter an ambulance arrived and Mr. Jokic was taken to Mount Sinai Hospital.

27. While at the hospital Mr. Jokic was handcuffed to the bed.

28. Mr. Jokic asked another police officer to loosen the handcuffs on his wrists and the officer complied with his request.

29. While at the hospital Mr. Jokic underwent a CAT scan of his head.

30. Mr. Jokic was released from Mount Sinai Hospital at approximately 8:00 am and was taken to the 114th precinct in a patrol car.

31. Mr. Jokic was held at the precinct until approximately 11:00 am.

32. Mr. Jokic was then taken back to the hospital at the request of the doctor.

33. At the hospital, Mr. Jokic underwent further scans to check for internal bleeding and a possible fracture of the skull.

34. In or about the afternoon of September 26, 2017, Mr. Jokic was taken back to the 114th precinct.

35. Mr. Jokic was taken to Central Bookings at approximately 5:00 pm on September 26, 2017.

36. Mr. Jokic was arraigned shortly thereafter and was released.

37. In the Criminal Court Complaint, PO Kenefick falsely stated that he "observed the Defendant, Goran Jokic, urinating in the public place open to public view"; that "when he and Police Officer Connor Lichte approached the Defendant, the Defendant started to curse and yell at the Deponent and Police Officer Connor"; that "when he and Police Officer Connor were placing handcuffs on the Defendant, the Defendant flailed his arms, twisted his body, kicked his legs, pushed the Deponent, in an attempt to avoid being handcuffed and placed under arrest"; and that "the Defendant laid on

4

the ground and when the Deponent ordered him to stand up the Defendant refused to comply with the order and spat at the Deponent's face."

38. Mr. Jokic returned to court on November 20, 2017, and the charges against him were adjourned contemplating dismissal.

39. As a result of this incident, Mr. Jokic suffered and continues to suffer, *inter alia*, pain and numbness in his wrists; pain and aching in his back; nerve damage in his neck; a head injury; ringing in his ears; dizziness; and cuts, scrapes and bruising to his arms, shoulders, and torso.

40. Mr. Jokic suffered physically and emotionally as a result of the events of September 26, 2017, and felt fear, embarrassment, humiliation, emotional distress, frustration, anxiety, loss of liberty and physical pain.

## FIRST CAUSE OF ACTION

(42 USC 1983 – False Arrest)

41. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

42. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 USC 1983.

43. Defendants have deprived Plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that Plaintiff was falsely arrested by Defendants.

44. Defendants unreasonably and unjustifiably confined Plaintiff.

45. Plaintiff was aware of, and did not consent to, his confinement.

46. The confinement was not privileged.

47. Plaintiff has been damaged a result of Defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court

## SECOND CAUSE OF ACTION

(42 USC 1983 – Excessive Use of Force)

48. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

49. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 USC 1983.

50. Defendants have deprived Plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that Defendants used excessive and unreasonable force against Plaintiff.

51. Plaintiff has been damaged as a result of Defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## THIRD CAUSE OF ACTION

(42 USC 1983 –Denial of Right to a Fair Trial)

52. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

53. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 USC 1983.

54. Defendants have deprived Plaintiff of his right to a fair trial, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

55. Defendants created false information likely to influence a jury's decision and then forwarded that information to prosecutors, resulting in Plaintiff suffering a deprivation of liberty and a violation of his rights.

56. Plaintiff has been damaged as a result of Defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## FOURTH CAUSE OF ACTION

(42 USC 1983 – Monell Claim – Practice and Policy: 'Testilying')

57. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

58. New York City has a practice and policy of police officers fabricating evidence and making false statements under oath, known as 'testilying'.

59. This practice and policy has been widespread for many years and has been well documented throughout the media, including The New York Times, WNYC, and the New York Daily News.

60. In 2018, NYPD detective Michael Foder pled guilty to perjury in the United States District Court for the Eastern District of New York ("EDNY"), having fabricated evidence and given false testimony under oath in a case from 2016. Detective Foder testified in the EDNY in 2016 that a witness had made a positive identification based on a photo-line-up that Detective Foder had shown the witness. However, it later transpired that Detective Foder had doctored the photo line-up, as the photographs he

claimed to have shown the witness had not been taken on the date of the line-up. The NYPD commissioner, James P. O'Neill, stated that Detective Foder had been "willfully giving false testimony."

61. Another NYPD officer, Detective Kevin Desormeau, was convicted of perjury in New York Supreme Court in April 2018, having given false statements under oath in a case from 2014. Detective Desormeau claimed to have personally witnessed a hand-to-hand drug deal in Brooklyn. However security camera footage demonstrated that Detective Desormeau was lying and had fabricated his testimony.

62. In addition, Detective Desormeau's partner, Detective Sasha Neve, pled guilty to perjury charges in New York Supreme Court in June 2018, having fabricated sworn statements in a number of arrests in 2014.

63. A review in 2015 by WNYC of more than one thousand criminal and civil court cases, and interviews with attorneys, turned up more than one-hundred-and-twenty officers with at least one documented credibility issue over the prior ten years.

64. A report published in March 2018 by The New York Times found that in at least twenty five cases, dating back to January 2015, "judges or prosecutors determined that a key aspect of a New York City police officer's testimony was probably untrue."

65. In 2011, Justice Gustin L. Reichbach of the State Supreme Court in Brooklyn, condemned a widespread culture of lying and corruption in the NYPD's drug enforcement units, stating that "this court was shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed.'"

66. In 2017, Judge Weinstein, a Senior United States District Judge in the EDNY, stated that cases of false arrest "are becoming increasingly difficult to try fairly" because "jurors are ever more aware of stories in the media reporting police officers lying to justify false arrests and to convict criminal defendants." The Judge went on to state that "one commentator discussing police officer veracity indicates: some experts on police practice treat lying by police at trials and in their paperwork as the "norm," "commonplace," or "routine."" (See Cordero v City of NY, 282 F Supp 3d 549, 554 [EDNY 2017]).

67. This practice and policy of police officers fabricating evidence and making false statements under oath, as detailed above, is so consistent and widespread that a supervising policy-maker of New York City must have been aware of it.

68. New York City knew, or should have known, that this practice and policy of police officers fabricating evidence and making false statements under oath, directly results in individuals suffering a deprivation of their constitutional rights, such as Plaintiff.

69. New York City was a final decision maker and, as a matter of practice and policy, has acted with reckless indifference to Plaintiff's constitutional rights.

70. As a result, Plaintiff has been damaged in an amount believed to equal or exceed the jurisdictional limit of this Court.

**FIFTH CAUSE OF ACTION**

(42 USC 1983 – Monell Claim – Deliberate Indifference: Failure to Train, Supervise, and Discipline)

71. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

72. As detailed above, there has been a widespread pattern of NYPD police officers fabricating evidence and making false statements under oath.

73. Despite this widespread pattern, New York City has failed to take the steps necessary to properly train, supervise or otherwise instruct its officers, including PO Kenefick and PO Lichte, to prevent police officers from fabricating evidence and making false statements under oath.

74. New York City knew, or should have known to a moral certainty, that police officers, such as PO Kenefick and PO Lichte, have to give sworn statements under oath.

75. New York City knew, or should have known, that the correct training and/or supervision could have prevented officers such as PO Kenefick and PO Lichte from fabricating evidence and making false statements under oath.

76. In addition, New York City has consistently failed to discipline those police officers who have fabricated evidence and made false statements under oath.

77. There are a number of police officers who have been promoted within the NYPD despite having been found to have fabricated evidence under oath.

78. In 2013, Officer Konrad Zakiewicz gave testimony in a criminal prosecution in the EDNY. In that case, the Judge stated that the "Court finds the officers' observations, particularly those of Officer Zakiewicz, inherently and transparently false" and "the Court need not even resort to the officers' seriously damaged credibility to find their

testimony here lacks honesty." Despite this, Officer Zakiewicz was later promoted to detective.

79. In October 2017, Officer Nector Martinez was found to be non-credible by the judge in a gun-possession trial, where video surveillance footage showed Officer Martinez's testimony to be false. Despite this, Officer Martinez was later promoted to the rank of detective.

80. Police Officer Sean Kinane was also promoted to detective in 2017, even though a federal judge the year before had said his testimony in a drug case was "unreliable" and "not credible."

81. In March 2017, NYPD Inspector Christopher McCormack was promoted to Deputy Chief, despite that fact that a judge rejected the account of an arrest given by Inspector McCormack in Court in 2016, with the judge concluding that little of his testimony was credible.

82. The Civilian Complaint Review Board (CCRB) records and investigates instances of police officers making false statements. According to an investigation by The New York Times, which tracked eighty-one cases from 2010, the CCRB has been notified of only two cases in which the NYPD Internal Affairs Bureau upheld the board's accusation that the officer had made a false statement. In the other seventy-nine cases, the NYPD found no wrongdoing or found the officer guilty of lesser misconduct, such as failing to properly fill out a memo book. Richard Emery, former chair of the CCRB, said that "there didn't appear to be any disciplinary consequences for cases where it seemed black and white that the officer was not telling the truth."

83. New York City knew, or should have known, that this practice and policy of officers fabricating evidence and making false statements under oath, directly results in individuals suffering a deprivation of their constitutional rights, such as Plaintiff.

84. New York City was a final decision maker and, as a matter of practice and policy, has acted with a reckless indifference to Plaintiff's constitutional rights.

85. As a result, Plaintiff has been damaged in an amount believed to equal or exceed the jurisdictional limit of this Court.

## JURY DEMAND

86. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Judgment against Defendants together with costs and disbursements as follows:

> In favor of Plaintiff in an amount to be determined by a jury, but at least equal or exceeding the jurisdictional limit of this court for each of Plaintiff's causes of action;
> Awarding Plaintiff punitive damages in an amount to be determined by a jury;
> Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action;
> And such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 2, 2019

                                By:    _____/s/_____
                                       Malcolm Anderson (MA 4852)
                                       PetersonDelleCave LLP
                                       Attorney for Plaintiff
                                       233 Broadway, Suite 1800
                                       New York, NY 10279
                                       (212) 240-9075